1  Denyse Clancy (CA Bar No. 255276)
   **BARON & BUDD, P.C.**
2  3102 Oak Lawn Avenue, Suite 1100
   Dallas, Texas 75219
3  Telephone: 214/521-3605
   Facsimile: 214/520-1181
   dclancy@baronbudd.com
4
5  Daniel E. Becnel, Jr.
   Matthew B. Moreland
   **BECNEL LAW FIRM, LLC**
6  106 West 7th Street
   P.O. Drawer H
7  Reserve, LA 70084
   Phone: (985) 536-1186
8  Facsimile: (985) 536-6445
   dbecnel@becnellaw.com
9  mmoreland@becnellaw.com

10 Jerrold S. Parker
   **PARKER WAICHMAN ALONSO LLP**
11 111 Great Neck Road
   Great Neck, NY 11021
   Phone: (516) 740-7711
12 Facsimile: (516) 740-7811
   jparker@yourlawyer.com
13
   Attorneys for Plaintiffs
14 and the Proposed Class

15              **UNITED STATES DISTRICT COURT**
16              **CENTRAL DISTRICT OF CALIFORNIA**

17 RHONDA TALBOT, on behalf of herself )  CASE NO.:
                                        )  2:10-cv-01039-JVS-FMO
18 and her minor child, A. V., and      )
   all others similarly situated,       )
19                                       )
            Plaintiff(s),               )
20                                       )  AMENDED CLASS ACTION
                                        )  COMPLAINT FOR:
21 v.                                    )  1. Breach of Implied Contract
                                        )  2. Negligence
22                                       )  3. Violation of the California
                                        )     Unfair Competition Law
23                                       )  4. False Advertising
                                        )  5. Breach of the Implied
24                                       )     Warranty of Merchantability
                                        )  6. Breach of the Implied
25                                       )     Warranty of Fitness for a
                                        )     Particular Purpose
26                                       )  7. Strict Products Liability
                                        )  8. Injunctive Relief
27 TOYOTA MOTOR NORTH AMERICA, )  9. Personal Injury
   INC.; TOYOTA MOTOR ENGINEERING )
28 &MANUFACTURING NORTH          )
   AMERICA, INC.; and TOYOTA MOTOR )
   SALES, U.S.A., INC.,          )

                                      1

LODGED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JUN 30 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
2010 JUL - I  AM 9: 36

Defendants.       )    <u>JURY TRIAL DEMANDED</u>

## AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

NOW COMES Plaintiff, Rhonda Talbot, individually and as representative of her minor child, A. V., and all similarly situated individuals, and brings this Amended Class Action Complaint against Defendants, Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota"), and makes the following allegations based on an investigation by counsel that included, *inter alia*, review and analysis of Defendants' websites, news reports, and filings in other related litigation against Toyota. In support of this Amended Class Action Complaint, Plaintiff submits and alleges the following:

## INTRODUCTION

1.     This is a class action lawsuit against Defendants for admittedly dangerous defect in millions of its vehicles that can cause accelerator pedal mechanisms to get stuck in an open position, thereby causing the vehicle to accelerate unintentionally and uncontrollably.

2.     Toyota has issued two separate recalls to address problems with unintended acceleration of its vehicles. One involved accelerator pedals interfering with floor mats (the "Floor Mat Interference" recall), and the other involved worn accelerator mechanisms getting stuck in an open position, independent of the floor mats (the "Worn Accelerator" recall). Approximately 5.9 million vehicles, including the Plaintiff's, have been recalled to date.

3.     The recalls did not provide immediate relief for vehicle owners. Rather, Toyota disclosed that dangerous defects existed and stated that Toyota would implement a repair plan in the future. With respect to the Floor Mat Interference recall, Toyota advised owners to remove the floor mats as an interim measure, and that more complete repairs would not be available for several weeks or months. With respect to the Worn Accelerator recall, Toyota advised owners of

the dangerous condition and stated that a remedy was not yet available. These announcements left vehicle owners in the position of having to drive knowingly dangerous vehicles.

4. Some vehicle owners, including Plaintiff, have driven their cars less than they otherwise would due to fear of being in an accident.

5. Nearly 2,000 complaints about unintended acceleration in Toyota vehicles have reportedly been identified since 2001, including at least 19 deaths. Toyota was reportedly aware of many of the incidents, yet it failed to adequately investigate or fix the defect.

6. Plaintiff seeks damages suffered by the Class as a result of Toyota's conduct, including but not limited to: (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

7. Plaintiff also seeks injunctive relief including: (i) repairs to remove the dangerous condition; (ii) an extension of warranty coverage covering components of the acceleration system; and (iii) individual notice to each owner effected by the Worn Accelerator recall disclosing the dangerous condition.

8. An undated article on usatoday.com discussing the recalls stated: "Kelley Blue Book says resale values of [Toyota's] affected models could fall 4% to 5% within the next six weeks."

9. Defendants' unlawful conduct emanated from California, where Toyota-USA is based. On information and belief, this is where Defendants' decisions regarding safety issues, including the accelerator defect, were made or approved.

**THE PARTIES**

10. Plaintiff, Rhonda Talbot, is a citizen of the State of California and resides in Los Angeles, California in the County of Los Angeles.

11. In December of 2008, Plaintiff leased a Toyota Camry XL, model year 2009, from Marina Del Rey Toyota in Marina Del Rey, California.

12. Plaintiff's Toyota vehicle was subject to a recall by Toyota in January of 2010 for defects in the vehicle's accelerator pedal. Before that recall, however, Plaintiff had experienced several incidents of her vehicle suddenly accelerating.

13. On or about March 24, 2009, Ms. Talbot's vehicle surged while she was attempting to brake in traffic in Santa Monica, California, thereby causing an accident and damage to her vehicle.

14. On or about April 2, 2009, Ms. Talbot's vehicle surged in traffic on Burton Way, thereby causing her vehicle to become lodged under a sport-utility vehicle. Plaintiff's vehicle was damaged and took a few weeks to be repaired.

15. On or about September 20, 2009, Ms. Talbot's vehicle surged again as she was attempting to park it, causing the vehicle to hit another car.

16. On or about October 22, 2009, Ms. Talbot's vehicle again surged, this time within approximately 100 feet of her home, causing the vehicle to hit a Highlander sports-utility vehicle and damaging the front of Ms. Talbot's vehicle.

17. On or about November 11, 2009, Ms. Talbot's car again malfunctioned in traffic, causing an accident.

18. On or about January 14, 2010, Plaintiff's vehicle suddenly accelerated, causing the vehicle to hit another car, this time when Ms. Talbot's young children, including A. V., were in the car.

19. During the foregoing, Ms. Talbot repeatedly contacted Toyota representatives, who assured her nothing was wrong with the vehicle, and who eventually advised her to throw her floor mats in her trunk.

20. To the extent that any of the following causes of action require provision of notice to the Defendants, Plaintiff has already provided ample notice via telephone calls and alleges that attempts to effect any other notice would be futile.

21. Ms. Talbot also lost the use of her vehicle for extended periods while it was being repaired from these accidents caused by the defect.

4

22. Ms. Talbot primarily keeps her Toyota vehicle in her driveway now as she is afraid to drive it due to the defect.

23. Plaintiff brings this action on her own behalf and on behalf of her minor child, A. V., and on behalf of all similarly situated persons in the United States who own a Toyota vehicle of model year 2005, 2006, 2007, 2008, 2009, and/or 2010, which was subject to recall by Toyota in November of 2009 and/or January of 2010 for defects in the vehicle's accelerator pedal.

24. Excluded from the Class are Toyota; officers, directors, board members, or employees of Toyota; any entity in which Toyota has a controlling interest; affiliates, legal representatives, attorneys, heirs or assigns of Toyota; any federal, state or local government entity; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.  Plaintiff reserves the right to modify or amend this Class definition if discovery and/or further investigation reveal the necessity to do so.

25. Defendant, Toyota Motor North America, Inc., is a California corporation with its principal place of business located at 19001 South Western Avenue, Torrance, California 90501.

26. Defendant, Toyota Motor Engineering and Manufacturing North America, Inc., is a Kentucky corporation with its principal place of business located at 25 Atlantic Avenue, Erlanger, Kentucky 41018.

27. Defendant, Toyota Motor Sales, U.S.A., Inc., is a California corporation with its principal place of business located at 19001 South Western Avenue, Torrance, California 90501.

28. At all times relevant hereto, each of the Defendants acted as the agent of each of the other Defendants.

### JURISDICTION AND VENUE

29. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from at least one defendant; there are more than 100 class members

nationwide; and th aggregate amount in controversy exceeds $5 million. This Court has personal jurisdiction over Defendants because Defendant Toyota Motor Sales, U.S.A., Inc., and Defendant Toyota Motor North America, Inc., are headquartered in California, and all Defendants conduct business in this state.

30. Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in this District because a substantial part of the acts giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

31. Toyota is the largest automobile manufacturer in the United States in terms of number of sales per year. Over the last ten years, Toyota has sold over 20 million vehicles in the United States.

32. Toyota manufactures and sells various models of passenger and commercial vehicles to customers in each of the states, including the Avalon, Camry, Corolla, Highlander, Matrix, Rav4, Sequoia, and Tundra.

33. Toyota operates manufacturing facilities in several different states, including but not limited to Alabama, California, Indiana, Kentucky, Texas, and West Virginia.

### A.   Toyota's Electronic Throttle Control System

34. Beginning in the late 1990s and continuing to today, Toyota manufactured certain automobiles with an Electronic Throttle Control system ("ETC").

35. Unlike traditional throttle control systems, where a physical cable connects the accelerator pedal to the engine throttle, under the ETC system, the engine throttle is controlled by electronic signals sent from the gas pedal to the engine throttle. A sensor at the accelerator detects how far the gas pedal is pressed and transmits that information to a computer module which controls a motorized engine throttle. The computer module determines how far the accelerator is depressed and, in turn, tells the engine throttle motor how far to open the throttle valve.

36. When Toyota first introduced the ETC, they continued to include a mechanical

6

linkage between the accelerator and the engine throttle control. This was meant as a safety measure in the event of a sudden unintended acceleration. The safety measure system would disconnect the ETC and automatically allow the throttle to be controlled by the mechanical linkage.

37. Beginning with the 2001 model year, however, Toyota began manufacturing vehicles without a mechanical linkage.

38. In addition, Toyota's ETC system fails to include a safety measure incorporated by other manufacturers that instructs the ETC system to reduce the engine idle when the brakes are applied.

39. Also, many of Toyota's vehicles now include an electronic ignition button rather than a key-turned switch. In these cars, no easy mechanical means exist to turn off the engine in case of an unintended acceleration.

40. The combination of a lack of these safety systems creates a situation in which there are no mechanical or electronic safety mechanisms to allow the driver to stop or slow the car during an unintended acceleration.

41. Moreover, in a January 21, 2010 press release announcing the Worn Accelerator Recall, Toyota warned drivers that, in the event of unintended acceleration, the "brakes should not be pumped repeatedly because it could deplete vacuum assist, requiring stronger brake pedal pressure." Thus, pumping the brakes, which occurs instinctually for some drivers, could impair the brakes.

**B.    Toyota's Recalls**

42. On September 29, 2009, Toyota announced that it was investigating the "potential for an accelerator pedal to get stuck in the full open position due to an unsecured or incompatible driver's floor mat." The unintended acceleration issue effected certain makes and models of Toyota's vehicles.

43. On November 2, 2009, Toyota issued a press release announcing a "future voluntary recall" related to floor mats that interfere with accelerator pedals. Toyota stated that it had not yet developed a remedy, but it was advising owners to remove the driver's side floor mat as a temporary measure. Toyota also mailed

letters to effected owners notifying them of the issue.

44. The following makes and models were effected by the recall:

- 2007 -2010 Camry
- 2005-2010 Avalon
- 2004 - 2009 Prius
- 2005 - 2010 Tacoma
- 2007 - 2010 Tundra
- 2007 - 2010 Lexus ES350
- 2006 - 2010 Lexus IS250 and IS350

45. The recall initially effected 3.8 million vehicles. The number of vehicles was later increased to 4.2 million.

46. On November 6, 2009, Toyota issued a press release responding to media reports about growing suspicion that the unintended acceleration was caused by a glitch in the "electronic engine management system" rather than simple interference with floor mats. Toyota's press release noted that removal of floor mats was only a temporary measure, and that further repairs would be needed once a remedy was available.

47. Thus, vehicle owners were placed in the position of having to drive dangerously defective cars until a future remedy was implemented.

48. On November 8, 2009, the Los Angeles Times reported that many instances of unwanted acceleration had occurred:

> More than 1,000 Toyota and Lexus owners have reported since 2001 that their vehicles suddenly accelerated on their own, in many cases slamming into trees, parked cars and brick walls, among other obstacles, a Times review of federal records has found.
>
> The crashes resulted in at least 19 deaths and scores of injuries over the last decade, records show. Federal regulators say that is far more than any other automaker has experienced.
> . . .
> In a written statement, the NHTSA [National Highway Traffic Safety Administration] said its records show that a total of 15 people died in crashes related to possible sudden acceleration in Toyota vehicles from the 2002 model year and newer, compared with 11 such deaths in vehicles made by all other automakers.

8

The Times located federal and other records of 19 fatalities involving Toyota and Lexus vehicles from the same model years in which sudden or unintended acceleration may have been a factor, as well as more than 1,000 reports by owners that their vehicles had suddenly accelerated. Independent safety expert Sean Kane, president of Safety Research and Strategies, said he has identified nearly 2,000 sudden-acceleration cases for Toyota vehicles built since 2001.

49.   The article noted that Toyota was aware of many of the instances of unintended acceleration, and that Toyota withheld certain consumer complaints about unintended acceleration when responding to the NHTSA's requests for customer complaints.

50.   On November 25, 2009, Toyota issued a press release announcing a remedy it developed for the Floor Mat Interference recall. The shape of the accelerator pedal would be reconfigured for all effected vehicles. Also, the shape of the floor surface underneath the floor mat would be reconfigured for certain vehicles. Further, a break override system to cut engine power in case of simultaneous application of both the accelerator and brake pedals would be installed on certain vehicles. However, these repairs would not be available until at least another month for three Toyota models, and on a "rolling schedule during 2010" for the remaining five models. Thus, vehicle owners had to continue to drive dangerously defective cars.

51.   On December 5, 2009, the Los Angeles Times again reported that the unintended acceleration might be related to a problem beyond floor mat interference.

52.   On December 10; 2009, Toyota issued a statement on its website rebutting the Los Angeles Times report and denying that an electronic problem existed.

53.   On December 23, 2009, the Los Angeles Times reported that Toyota had a history of delaying recalls and keeping a "tight lid on disclosure of potential problems." The article outlined several instances of Toyota's failure to notify consumers of known dangerous conditions.

54.   On January 21, 2010, Toyota issued a press release stating that it would recall

an additional 2.3 million vehicles. This recall, the Worn Accelerator recall, was "separate from the on-going recall of approximately 4.2 million Toyota and Lexus vehicles to reduce the risk of pedal entrapment by ... floor mats." The Worn Accelerator recall addressed a condition that "can occur when the pedal mechanism becomes worn and, in certain conditions, the accelerator pedal many become harder to depress, slower to return or, in the 'worst case, stuck in a partially depressed position." According to the press release, this defect was discovered when Toyota was investigating reports of sticking accelerator pedals "without the presence of floor mats." The Worn Accelerator recall involved the following Toyota models:

- 2009 - 2010 RAV4
- 2009 - 2010 Corolla
- 2009 - 2010 Matrix
- 2005 - 2010 Avalon
- 2007 - 2010 Camry
- 2010 Highlander
- 2007 - 2010 Tundra
- 2008 - 2010 Sequoia

55. Some of these 2.3 million vehicles were also effected by the Floor Mat Interference recall. Approximately 1.7 million vehicles were effected by both recalls.

56. The January 21, 2010 press release noted that Toyota had not yet determined how to correct the defect underlying the Worn Accelerator recall. Thus, similar to owners subject to the Floor Mat Interference recall, owners subject to the Worn Accelerator recall could not yet bring their cars to dealerships for repairs. This left more owners in the position of having to drive a dangerously defective car indefinitely.

57. The Worn Accelerator recall was more serious than the Floor Mat Interference recall because drivers could not simply remove the floor mat as an interim

10

1   measure.

2   58.   On January 26, 2009, Toyota issued a press release announcing that it would
3         suspend sales of vehicles effected by the Worn Accelerator recall until a remedy
4         was available.

5   59.   On January 27, 2010, Toyota announced on its website that the following
6         additional models were being added to the Floor Mat Interference recall:

7               • 2008 - 2010 Highlander

8               • 2009 - 2010 Corolla

9               • 2009 - 2010 Venza

10              • 2009 - 2010 Matrix

11              • 2009 - 2010 Pontiac Vibe

12  60.   This development increased the total number of vehicles subject to the Floor
13        Mat Interference recall by 1.1 million, to a total of 5.3 million.

14  61.   Thus, to date, 5.9 million vehicles have been effected by one or both of the
15        recalls: 5.3 million vehicles related to the Floor Mat Interference recall, plus 2.3
16        million vehicles related to the Worn Accelerator recall, less 1.7 million vehicles
17        effected by both recalls.

18  62.   Given the approximately 2,000 instances of unintended acceleration since 2001,
19        and Toyota's knowledge of many or all of the instances, Toyota should have
20        aggressively investigated the cause of the unintended acceleration and
21        developed a remedy.  Toyota failed to do either, evidenced by the fact that the
22        first recall wasn't implemented until 2009, eight years after instances of
23        unintended acceleration first began.

24  63.   Toyota also failed to notify vehicle owners effected by the Worn Accelerator
25        recall. Toyota announced the recall via press release. However, Toyota has not
26        contacted owners by mail or other direct means.  In light of the seriousness of
27        the danger, Plaintiff seeks injunctive relief requiring Toyota to provide direct
28        notice to owners effected by the Worn Accelerator recall, similar to the direct
          mail notice used in the Floor Mat Interference recall.

11

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this class action on behalf of all similarly situated persons, pursuant to Federal Rule of Civil Procedure 23(b)(3).

65. The proposed Class is defined as follows:

All persons in the United States who own a Toyota vehicle of model year 2005, 2006, 2007, 2008, 2009, and/or 2010, which was subject to recall by Toyota in November of 2009 and/or January of 2010.

66. In addition to or in the alternative to the above, Plaintiff may propose subclasses so as to ameliorate any choice of law concerns or as required by Federal Rule of Civil Procedure 23 by proposing subclasses based upon the fifty states and the Commonwealth of Puerto Rico and the District of Columbia.

67. While Plaintiff and the proposed class may seek subclasses as set forth above, this will be the subject of an appropriate Rule 23 class certification motion. Until such time, Plaintiff and the proposed class alternatively propose an initial subclass defined as all residents of the State of California who own a Toyota vehicle of model year 2005, 2006, 2007, 2008, 2009, and/or 2010, which was subject to recall by Toyota in November of 2009 and/or January of 2010. Excluded from the class are the Toyota Defendants, officers, directors, board members or employees of the Toyota Defendants; any entity in which the Toyota Defendants have a controlling interest; affiliates, legal representatives, attorneys, heirs or assigns of the Toyota Defendants; any federal, state or local governmental entity, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

68. **NUMEROSITY:** Members of the Class are so numerous that their joinder would be impracticable. The Class includes millions of owners of Toyota vehicles. The approximate number of Class members at this time is 5.3 million. Judicial economy favors a class action mechanism instead of forcing each class member to bring a separate action individually.

69. **COMMONALITY:** There are questions of law or fact common to the class, including but not limited to the following:

12

a.     Whether the recalled automobiles had an unreasonably dangerous or defective condition;

b.     Whether Defendants' conduct constituted actionable negligence;

c.     Whether Defendants entered into and breached implied contracts;

d.     Whether Defendants' conduct violated the deceptive trade practices laws;

e.     Whether Defendants' conduct constituted false advertising;

f.     Whether Defendants' conduct constituted a breach of the implied warranty of merchantability; and

g.     Whether Defendants' conduct constituted a breach of the implied warranty of fitness for a particular purpose.

70.   **TYPICALITY:**   Plaintiff's claims are typical of the claims of the Class Members.   Plaintiff and all Class Members have been injured by the same defective mechanism, that being the accelerator mechanism of Plaintiff and Class Members' vehicles becoming stuck in a depressed position and failing to return or returning extremely slowly to the idle position causing extreme, uncontrollable and inherently dangerous acceleration of the vehicle.  Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of the Class Members and are based on the same legal theories.

71.   **ADEQUACY:** Plaintiff willfully and adequately assert and protect the interests of the Class.  Plaintiff has retained counsel who is experienced in class actions and complex mass tort litigation.   Neither Plaintiff nor their counsel have interests contrary to or conflicting with the interests of the Class.

72.   **SUPERIORITY:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class members is economically unfeasible and impractical.  While the aggregate amount of the damages suffered by the class is in the millions of dollars, the individual damages suffered by each of the Class members as a result of the wrongful conduct by Toyota, in many cases, are too small to warrant the expense of individual lawsuits.  Even if the individual

13

1  damages were sufficient to warrant individual lawsuits, the court system would
2  be unreasonably burdened by the number of cases that would be filed.

73. Class certification is appropriate under Fed. R. Civ. P. 23, as the Class satisfies
the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3). Class certification is also
appropriate under Fed. R. Civ. P. 23(b)(2) with respect to injunctive relief.

74. Plaintiff does not anticipate any difficulties in the management of this litigation.

### FIRST CLAIM FOR RELIEF
### BREACH OF IMPLIED CONTRACT

75. Plaintiff re-alleges all preceding allegations as if fully set forth herein.

76. The essential elements of an implied contract are an offer, acceptance, and
consideration. The existence and terms of the contract are implied by the
conduct of the parties.

77. An offer, acceptance, and consideration for the sale of vehicles existed,
evidenced by the fact that Plaintiff and Class members paid money to
Defendants in exchange for vehicles. The act of exchanging money for vehicles
was an offer and acceptance. The money and vehicles constituted consideration.

78. An implied term of the sale was that Defendants would provide vehicles that did
not contain an unreasonably dangerous condition. There was a meeting of the
minds regarding the absence of unreasonably dangerous conditions.

79. Defendants' intent to provide safe vehicles was evidenced by, among other
things, its advertising and marketing materials emphasizing the safety qualities
of its vehicles. For example, a statement on Toyota's website dated November
18, 2009 states: "Toyota is confident its vehicles are among the safest on the
road today and its committed to the highest levels of vehicle safety and quality."
In light of this statement and others like it, Plaintiff and Class members had a
reasonable expectation that the vehicles they purchased would not contain an
unreasonably dangerous condition.

80. The absence of unreasonably dangerous conditions was a material term to the

14

contracts. Plaintiff and Class members would not have purchased the vehicles, or would not have paid the purchase price they paid, if they knew of the defects.

81.  Defendants breached the implied terms of their contracts by providing vehicles that contained unreasonably dangerous conditions. They also breached their duties by failing to adequately investigate acceleration complaints and failing to individually notify Class members of the Worn Accelerator recall and underlying dangerous condition.

82.  But for Defendants' breach of duties, Plaintiff and Class members would not be faced with driving unsafe vehicles and suffering the related consequences alleged herein.

83.  Plaintiff and Class members suffered and will continue to suffer damages including but not limited to (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

## SECOND CLAIM FOR RELIEF

## NEGLIGENCE

84.  Plaintiff re-alleges the preceding allegations as if fully set forth herein.

85.  Toyota had a duty to Plaintiff and Class Members to provide a safe product in design and manufacture, to notify the NHTSA, and to warn the NHTSA of the defective nature of the accelerator pedals in the Subject Vehicles.

86.  Defendants assumed a duty to exercise reasonable care in, among other things, manufacturing and selling automobiles that did not contain a dangerous condition. Defendants' duties arose from, among other things, the relationship between the parties as buyers and sellers.

87.  Defendants also assumed a duty to adequately investigate claims of unintended acceleration and to timely notify Class members of known dangerous conditions.

88.  Toyota breached its duty of reasonable care to Plaintiff and Class Members by designing the accelerator pedals of the Subject Vehicles in such a manner that

they were prone to becoming stuck in the depressed position and failing to return or returning extremely slowly to the idle position, thereby causing the vehicle to accelerate rapidly, uncontrollably and dangerously.

89.  Toyota breached its duty of reasonable care to Plaintiff and Class Members by manufacturing and/or assembling the accelerator pedals of the Subject Vehicles in such a manner that they were prone to becoming stuck in the depressed position and failing to return or returning extremely slowly to the idle position, thereby causing the vehicle to accelerate rapidly, uncontrollably and dangerously.

90.  Toyota breached its duty of reasonable care to Plaintiff and Class Members by failing to recall the Subject Vehicles at the earliest possible date and instead blaming the defect on a much less dangerous supposed "floor mat" defect.

91.  Toyota breached its duty of reasonable care to Plaintiff and Class Members by failing to exercise due care under the circumstances.

92.  As a direct and proximate result of Toyota's negligence as set forth in the preceding paragraphs, Plaintiff and Class Members have sustained and will continue to sustain damages including but not limited to (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

93.  Toyota's egregious misconduct alleged above warrants the imposition of punitive damages.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

94.  Plaintiff re-alleges the preceding allegations as if fully set forth herein.

95.  California Business and Professions Code § 17200 *et seq.*, also known as the Unfair Competition Law ("UCL"); prohibits unfair competition including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

untrue or misleading advertising."

96.  Defendants violated and continue to violate the UCL through one or more of the following unfair practices:

a.  Manufacturing and selling vehicles containing a dangerous condition;

b.  Failing to adequately investigate claims of unintended acceleration;

c.  Failing to individually notify Class members of the Worn Accelerator recall and underlying dangerous condition; and

d.  Violating other laws alleged herein.

97.  Plaintiff and Class members suffered and will continue to suffer damages including but not limited to (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

98.  Defendants' conduct has impaired competition in the motor vehicle industry.  It provided Defendants with an unfair advantage compared to its competitors when manufacturing and selling vehicles and earning profits thereon.

99.  Plaintiff seeks injunctive relief including (i) repairs to remove the dangerous condition; (ii) an extension of warranty coverage covering components of the acceleration system; and (iii) individual notice to each owner effected by the Worn Accelerator recall disclosing the dangerous condition pursuant to Cal. Bus. & Prof. §§ 17070 and 17203.

100.  As stated in Cal Bus. & Prof. § 17082, "[i]n any action under this chapter, it is not necessary to allege or prove actual damages or the threat thereof."  To the extent actual damages are proven, Plaintiff may be entitled to "three times the amount of the actual damages."  Plaintiff hereby seeks an award of actual and treble damages.

101.  Plaintiff also seeks an award of attorneys' fees and costs of the suit under Cal. Bus. & Prof. § 17082.

## FOURTH CLAIM FOR RELIEF

## FALSE ADVERTISING

102. Plaintiff re-alleges all preceding allegations as if fully set forth herein.

103. California Business and Professions Code § 17500 states:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

104. Toyota stated directly and indirectly in various marketing and advertising campaigns that its vehicles are safe and reliable. For example, a statement on Toyota's website dated November 18, 2009 states: "Toyota is confident its vehicles are among the safest on the road today and is committed to the highest levels of vehicle safety and quality." These statements were untrue in light of the problems with unintended acceleration.

105. Defendants' statements in its brochures, websites, television ads, newspaper ads, and other means constituted advertising for purposes of this claim.

106. Defendants' advertising program contained statements concerning vehicle safety and reliability that were false or misleading and that were known or should have been known to Defendants to be false or misleading.

107. As a direct result of Defendants' unlawful conduct, Plaintiff and the Class have suffered the damages including but not limited to (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

## FIFTH CLAIM FOR RELIEF

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

108. Plaintiff re-alleges the preceding allegations as if fully set forth herein.

109. Defendants' vehicles were accompanied by an implied warranty of

18

merchantability when sold, pursuant to California Civil Code § 1792.

110.  California Civil Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

a.  Pass without objection in the trade under the contract description.

b.  Are fit for the ordinary purposes for which such goods are used.

c.  Are adequately contained, packaged, and labeled.

d.  Conform to the promises or affirmations of fact made on the container or label.

111.  The vehicles encompassed by Toyota's recalls would not pass without objection in the automotive trade.  The vehicles are unreasonably dangerous and in need of repair.

112.  The vehicles are not fit for the ordinary purpose for which they were sold.  The vehicles were purchased to, among other things, safely transport drivers and passengers.  The vehicles cannot be used for safe transportation in their current condition.

113.  The vehicles were not adequately labeled because the labeling failed to disclose the dangerous conditions.

114.  Defendants breached the implied warranty of merchantability by manufacturing and selling vehicles containing an unreasonably dangerous condition.

115.  As a result of Defendants' unlawful conduct, Plaintiff and the Class have suffered and will continue to suffer the damages including but not limited to (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

116.   Plaintiff seeks injunctive relief injunctive relief including: (i) repairs to remove the dangerous condition; (ii) an extension of warranty coverage covering components of the acceleration system; and (iii) individual notice to each owner effected by the Worn Accelerator recall disclosing the dangerous condition to California Civil Code § 1794.

117.   Plaintiff also seeks an award of attorneys' fees and costs under California Civil Code § 1794.

## SIXTH CLAIM FOR RELIEF
## BREACH OF THE IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE

118.   Plaintiff re-alleges all preceding allegations as if fully set forth herein.

119.   California Civil Code § 1792.1 states:

> Every sale of consumer goods that are sold at retail in this state by a manufacturer who has reason to know at the time of the retail sale that the goods are required for a particular purpose and that the buyer is relying on the manufacturer's skill or judgment to select or furnish suitable goods shall be accompanied by such manufacturer's implied warranty of fitness.

120.   California Civil Code § 1791.1 (b) states:

> "Implied warranty of fitness" means (1) that when the retailer, distributor, or manufacturer has reason to know any particular purpose for which the consumer goods are required, and further, that the buyer is relying on the skill and judgment of the seller to select and furnish suitable goods, then there is an implied warranty that the goods shall be fit for such purpose.

121.   Defendants knew at the time they sold vehicles to Class members that such vehicles would be used for the specific purpose of, among other things, providing safe transportation.

122.   Defendants knew that Class members were relying on Defendants' skill and judgment in furnishing and/or recommending vehicles that were purportedly suitable for providing safe transportation.

123.   Defendants breached the implied warranty of fitness because the vehicles contained an unreasonably dangerous condition and were not suitable for providing safe transportation.

124.   As a direct result of Defendants' unlawful conduct, Plaintiff and the Class have

suffered and will continue to suffer the damages including but not limited to (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

125. Plaintiff also seeks injunctive relief including: (i) repairs to remove the dangerous condition; (ii) an extension of warranty coverage covering components of the acceleration system; and (iii) individual notice to each owner effected by the Worn Accelerator recall disclosing the dangerous condition pursuant to California Civil Code § 1794.

126. Plaintiff also seeks an award of attorneys' fees and costs under California Civil Code § 1794.

## SEVENTH CLAIM FOR RELIEF
## STRICT PRODUCTS LIABILITY

127. Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein, and pleads this claim for relief in the alternative to the breach of warranty claims.

128. Defendants engaged in the business of selling the Subject Vehicles which, without any substantial change in the condition in which they were sold, were a proximate cause of the damages of Plaintiff and the Class.

129. The Subject Vehicles were unreasonably dangerous in design.

130. At all times material hereto, Toyota was engaged in the business of designing, manufacturing, assembling, promoting, advertising, selling, and distributing Toyota Vehicles in the United States, including but not limited to, the Subject Vehicles.

131. Toyota knew and expected the Subject Vehicles to eventually be sold to and operated by purchasers and/or eventual owners of the Subject Vehicles, including Plaintiff and Class members; consequently, Plaintiff and Class Members were expected users of the product which Toyota manufactured.

21

132. The Subject Vehicles reached Plaintiff without substantial change in their condition from the time of completion of manufacture by Toyota.

133. The defects in the Subject Vehicles could not have been contemplated by any reasonable person expected to operate the Subject Vehicles, and, therefore, presented an unreasonably dangerous situation for expected users of the Subject Vehicles even though the Subject Vehicles were operated by expected users in a reasonable and foreseeable manner.

134. In addition, the risk of danger inherent in the design of the Subject Vehicles outweighs the benefits of that design.

135. Toyota should have reasonably foreseen that the dangerous conditions caused by the defective accelerator pedals in the Subject Vehicles would subject Plaintiff and Class Members to harm resulting from the defect.

136. Plaintiff and Class Members have used the Subject Vehicles reasonably and as intended, to the fullest degree possible given the defective nature of the accelerator pedals and the anti-lock brakes system, and, nevertheless, have suffered damages through no fault of their own.

137. As a direct result of Defendants' design, manufacture, assembly, marketing, and sales of the defective subject vehicles, Plaintiff and the Class have suffered and will continue to suffer the damages including but not limited to (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

## EIGHTH CLAIM FOR RELIEF
## INJUNCTIVE RELIEF

138. Plaintiff re-alleges the preceding allegations as if fully set forth herein.

139. Upon information and belief, in November of 2009 Toyota first attempted a "quick fix" of the defects in the accelerator pedals of the Subject Vehicles by voluntarily recalling the floor mats of the Subject Vehicles, citing the floor mats,

22

1    an easily replaceable aspect of the Subject Vehicles, not the accelerator pedals,
2    as the cause of the accelerators becoming stuck in the depressed position.

3  140.  Upon information and belief, Toyota has been aware of the problems with the
4        Subject Vehicles' accelerator pedals becoming stuck in the depressed position
5        since, at the latest, September of 2009.

6  141.  In order to protect Plaintiff, Class Members, and the public at large, Toyota
7        should be preliminarily enjoined from proposing, implementing, or in any other
8        way manifesting to the public possible solutions and/or fixes of the defective
9        accelerator pedals without prior approval from the NHTSA.

10 142.  Plaintiff and Class Members have a substantial likelihood of success on the
11       merits of demonstrating that Toyota designed, manufactured and/or assembled
12       the accelerator pedals of the Subject Vehicles in such a manner that they were
13       prone to becoming stuck in the depressed position and failing to return or
14       returning extremely slowly to the idle position, thereby causing the vehicle to
15       accelerate rapidly, uncontrollably and dangerously, causing Plaintiff and Class
16       Members injuries, losses and damages.

17 143.  Plaintiff and Class Members risk irreparable harm should the Court not grant
18       preliminary injunctive relief as sought because Toyota may offer unapproved,
19       untested, and unworthy fixes to the defective accelerator pedals in the Subject
20       Vehicles.

21 144.  Toyota will incur little if any harm in being precluded from proposing fixes
22       without the approval of NHTSA; consequently, the balance of harms weighs
23       heavily in favor of Plaintiff, Class Members and the pubic at large, who could
24       be severely injured by a proposed fix to the defective accelerator pedals, which,
25       if unapproved by NHTSA, effectuates a solution as ineffective as switching the
26       floor mats was.

27 145.  Because the public may also be injured without the granting of the preliminary
28       injunction sought by Plaintiff and Class Members, granting of the preliminary
         injunction would serve the public interest.

146. Plaintiff and the Class Members also seek injunctive relief including: (i) repairs (approved by the NHTSA) to remove the dangerous condition; (ii) an extension of warranty coverage covering components of the acceleration system; and (iii) individual notice to each owner effected by the Worn Accelerator recall disclosing the dangerous condition.

## NINTH CLAIM FOR RELIEF
## PERSONAL INJURY

147. Plaintiff re-alleges the preceding allegations as if fully set forth herein.

148. Following the October 22, 2009 accident, Plaintiff Rhonda Talbot began experiencing pain in her lower back, causing her to seek treatment and being diagnosed with a herniated disc.

149. During the January 14, 2010 incident, Plaintiff A. V. was present in the vehicle and suffered a fracture in her neck, causing her to wear a neck brace for approximately four weeks.

150. Due to Defendants' failure to exercise reasonable care in, among other things, manufacturing and selling automobiles that did not contain a dangerous condition, Plaintiffs Rhonda Talbot and A. V. suffered these injuries.

151. Plaintiffs seek damages for medical expenses, physical pain and suffering, mental anguish, shock, fear, and loss of enjoyment of life, all past, present, and future, and for all other elements of damages allowed by California law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, demands judgment in their favor and against Toyota as follows:

a.   For an Order certifying the Class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3), appointing Plaintiff as the representatives of the Class, and appointing counsel for Plaintiff as counsel for the Class;

b.   For an award of compensatory damages according to proof;

c.   For an award of equitable and injunctive relief as requested above and according to proof;

d.    For punitive or exemplary damages against Toyota, consistent with the degree of Toyota's reprehensibility and the resulting harm or potential harm to Plaintiff and members of the Class, as well as an amount sufficient to punish Toyota and deter Toyota and others from similar wrongdoing;

e.    For an award of all costs incurred by Plaintiff in pursuing this action;

f.    For an award of reasonable attorneys' fees;

g.    For an award of any and all other damages suffered by Plaintiff and members of the Class; and

h.    For any other relief the Court deems reasonable.

## JURY DEMAND

Plaintiff demands a trial by jury on all factual issues.

Dated: June 28, 2010

Respectfully submitted,

Daniel E Becnel , Jr
Matthew B. Moreland
**Becnel Law Firm LLC**
106 West 7th Street
PO Drawer H
Reserve, LA 70084
(985) 536-1186
Fax: 985-536-6445
Email: dbecnel@becnellaw.com
PRO HAC VICE

Attorneys for Plaintiffs
and the Proposed Class

Mark P. Robinson, Jr.
**Robinson, Calcagnie & Robinson, Inc.**
620 Newport Center Drive
7th Floor
(949) 720-1288
Fax. (949) 720-1292
Email: mrobinson@rcrlaw.net
Plaintiffs' Liaison Committee for Personl
Injury/Wrongful Death Cases Co-Lead Counsel